577 A.2d 507
IN THE MATTER OF JOEL M. ALBERT, AN
ATTORNEY AT LAW.

Argued January 2, 1990—Decided August 8, 1990.

*Thomas J. McCormick,* First Assistant Ethics Counsel, argued the cause on behalf of Office of Attorney Ethics.

*Barry I. Croland* argued the cause for respondent (*Stern, Steiger, Croland, Tanenbaum & Schielke,* attorneys; *Barry I. Croland* and *Jay Rubenstein,* on the brief).

PER CURIAM.

A local District Ethics Committee (DEC) issued a presentment in one case and a recommendation for public discipline in another, in these disciplinary proceedings against respondent, Joel M. Albert. After a *de novo* review, a majority of the Disciplinary Review Board (DRB) recommended that respondent be suspended from the practice of law for three months. Three members of the DRB would have imposed a public reprimand.

In the first case respondent represented one Janet Jensen in a post-judgment matrimonial matter. The DEC's complaint, filed on March 5, 1986, alleged that Albert had failed to act with reasonable diligence and promptness, had not promptly com-

plied with reasonable requests for information, had not charged a reasonable fee, had not promptly delivered to the client funds belonging to her, had caused funds to be withdrawn from a statement savings account (established in the name of respondent's law partner as escrow agent for Jensen) in payment of his legal services without fulfilling the terms of a written retainer agreement, and had not made reasonable efforts to expedite litigation. The DRB's factual summary relevant to those charges is as follows:

On February 24, 1983, Janet Jensen retained respondent to represent her in a post-judgment matrimonial matter. At issue were the sale of the marital home, distribution of sale proceeds, support arrearages, and lack of jurisdiction. Jensen paid respondent a $500 retainer, pursuant to a written agreement that provided, among other things, for billings based on hourly rates.

A series of motions filed by respondent resulted in the sale of the marital home. A court order dated May 1984 provided, *inter alia*, that respondent could file an affidavit of services seeking counsel fees. Respondent never filed the affidavit.

On February 15, 1985, several of Jensen's requests for relief regarding child support, back alimony, and medical bills were granted. The court instructed respondent to prepare a proposed form of order and to file an application for counsel fees. Once again, respondent did not file the application. Neither did he submit the proposed form of order.

After the February 1985 proceeding, Jensen repeatedly telephoned respondent to determine the outcome of the motion. Respondent ignored her inquiries. On April 3, 1985, Jensen wrote to the court complaining that respondent would not return her calls. The court wrote to respondent on April 11, 1985, requesting immediate action on the matter. Thereafter, Jensen scheduled two April appointments with respondent, but she subsequently cancelled them.

On April 30, 1985, Jensen wrote to respondent discharging him as her attorney. She then filed a motion *pro se*, seeking to have the relief granted in February 1985 reduced to a written order. On May 29, 1985, the court signed an order. The order did not, however, accurately embody the relief granted in February. Jensen was forced to pay another attorney $2,100 to conclude the matter.

In May 1985, Jensen received a $3,000 check from respondent, which represented the balance of proceeds from the sale of the marital home that had been held in a savings account established by respondent's law firm [as "escrow agent" for Jensen]. On May 6, 1985, Jensen wrote a letter to respondent requesting a breakdown of the status of the account to determine the disposition of a[n] $8,000 deposit related to the sale of the marital home. [ (The reference is to an approximately $8,000 balance of funds in the account, some of which was subject to disputed claims of Jensen's former husband.) ] In this letter, Jensen indicated to respondent that she had never received any bills for

legal fees, despite her numerous requests. Jensen then discovered that in March 1984, respondent had withdrawn his legal fees, in the amount of $3,000, from the savings account. Respondent neither informed Jensen of the amount of his legal fees nor obtained her consent to withdraw the fees from the account.

In respect of the affairs of the second client, one Roger Goldman, the DEC concluded that Albert had grossly neglected the client's affairs, had failed to act with due diligence, had failed to communicate with Goldman, had failed to respond to the Committee's demands for information, and had knowingly violated the Rules of Professional Conduct. The record concerning those charges revealed that on November 20, 1984, Goldman had paid respondent $250 as a retainer to seek modification of an agreement concerning child-support payments, respondent having previously handled the dissolution of Goldman's marriage. Respondent deposited the check but failed to do any work on the case. Moreover, he neglected to answer four follow-up letters from Goldman and failed to return the client's many telephone calls. In his final letter, dated October 24, 1985, Goldman warned respondent that he would notify the appropriate ethics authorities if respondent did not take action or return the $250 retainer. It was only after Goldman had filed a grievance with the DEC that respondent returned the retainer, on December 12, 1985.

In addition to the foregoing, Albert failed to answer three letters from the DEC investigator or to file an answer to the ethics complaint or to respond to a follow-up letter from the DEC. He did attend the DEC hearing in October 1986, where he acknowledged that he had done nothing for his client Goldman and that he had ignored the client's correspondence as well as letters from the investigator and the DEC.

After a review of the complete record the DRB concluded that the findings of the DEC in both cases were fully supported by clear and convincing evidence. The DRB emphasized that because Albert had failed to file counsel-fee applications, as ordered by the court, and to submit a proposed form of order,

as the court had directed, Jensen had been forced to retain new counsel to bring the matter to a close. That was done only at considerable added expense. Moreover, the DRB concluded that respondent's withdrawal of $3,000 from the statement savings account without first obtaining the client's consent was improper and in violation of *DR* 9–102(A)(2), citing *In re Miller*, 100 *N.J.* 537, 544, 498 *A*.2d 356 (1985). In addition, the DRB found that respondent's disregard of his client Goldman's affairs and his failure to perform any services for more than a year after having taken a $250 retainer was aggravated by his lack of co-operation with the DEC. Finally, the DRB characterized respondent's failure to appear before it in October 1988 as a "contumacious disregard for ethics proceedings * * *."

■ Our independent review of the record satisfies us that respondent's ethical violations have been established by clear and convincing evidence. Indeed, respondent acknowledges his dereliction in many respects: (1) in the Jensen matter, (a) that he failed to act with reasonable diligence in failing promptly to resubmit a proposed form of order after the trial court's February 15, 1985, oral decision; (b) that he never sent Ms. Jensen a written itemized statement of the legal services rendered, pursuant to the retainer agreement, prior to withdrawing the $3,000 on account of fees for legal services; (c) that he did not file an affidavit of services as had otherwise been provided for by the trial court's order, and that his failure to resubmit a proposed form of order to the trial court amounted to a violation of his obligation to act with reasonable promptness or to expedite the litigation; (d) that he did not promptly comply with Ms. Jensen's requests for information between March 1985 and April 1985; and (2) in respect of his client Goldman, (a) that he had accepted a retainer of $250 and had not performed the services he had promised; and (b) that he did not respond to the DEC's investigator's inquiries and did not file a written answer to the formal Complaint. Respondent disputes, however, the finding and conclusion below that he withdrew funds in payment of his fee for services to Ms. Jensen

without prior authorization from her. He also contends that the DRB's finding that he had acted with gross negligence in respect of his client Goldman was not supported by clear and convincing evidence. Finally, he disagrees with the DRB's conclusion that his failure to attend oral argument before that body amounted to contumacious disregard for these ethics proceedings.

The first—a withdrawal of his fee—is a matter of credibility. Albert testified before the DEC that he had obtained his client's permission to withdraw $3,000 as fees. She denied it. Respondent's casual attitude in respect of his obligation under the written fee agreement lends support to our conviction that he felt free—quite improperly—to withdraw the escrow funds without anyone's permission.

The second, concerning the charge that respondent was "grossly negligent," rests on the contention that Goldman suffered no harm by reason of respondent's failure to prepare the memorialization of a modification to the agreement that had been previously implemented by Goldman and his former wife. The argument overlooks the client's understandable anxiety that in the absence of such a memorialization, he might well be confronted with demands in the future for child-support payments, which the written agreement that he so persistently sought was designed to foreclose. That those demands did not materialize is irrelevant to the client's extreme discomfort caused by respondent's prolonged inattention.

Finally, respondent submits that there is no evidence that his waiver of his appearance before the DRB amounted to any form of disrespect, either to the DRB itself or to an ethics proceeding. In that connection he points out that the DRB had sent him a notice scheduling its review for October 19, 1988, specifically noting that the review would be "*de novo* on the full record below," and that respondent could appear or waive his appearance. A form accompanying that notice likewise indicated that respondent could either appear and present addi-

tional arguments (limited to ten minutes except for extraordinary reasons) or could waive his appearance. Albert says that if he was entitled to waive his appearance, it is hardly fair to sanction him or to consider his non-appearance as an aggravating factor. But as the Office of Attorney Ethics points out, in its notice the Board's counsel asked respondent to indicate his receipt of the letter by returning the attached form, indicating thereon whether he intended to appear or to waive his appearance. Respondent left the appropriate area blank, and merely signed and dated the form. In the letter that accompanied his return of the form, received by the DRB on the afternoon of the day before the scheduled hearing, respondent explained that in view of his heavy trial schedule, he would be unable to be present, indicating, however, that "if the matter [could] be carried to another day," he would make himself available.

Although we are not prepared to conclude, as the DRB did, that respondent's conduct in this regard amounted to contumacious disrespect for the disciplinary body, the question is a close one. Respondent's attitude was at the least cavalier, particularly given the fact that in September 1985 he had received a letter of private reprimand from the DRB for having failed to respond promptly to an ethics complaint. The members of the DRB, all of whom spend long hours in the discharge of their burdensome duties with no compensation save for the satisfaction that comes with volunteer service to their profession, deserve better than the thoughtless discourtesy that Albert exhibited in this case.

The DRB found that respondent's behavior in these matters was "akin" to that of the attorney in *In re Smith*, 101 *N.J.* 568, 503 *A*.2d 846 (1986). In that disciplinary proceeding respondent failed to pursue his client's interests diligently, ignored her repeated telephone calls to him, failed to co-operate with the District Ethics Committee, and failed to file an answer to the complaint, to all of which his irregular office procedures contributed. *Id.* at 571–72, 503 *A*.2d 846. Smith had no prior disciplinary record, candidly admitted his misconduct, and ex-

pressed remorse. Because his lack of diligence had caused a client to sustain injury by way of a penalty for the late filing of a tax return, conduct that was aggravated by his failure to co-operate with the District Ethics Committee and the Disciplinary Review Board, we imposed a suspension from the practice of law for three months. The parallels with Albert's case are obvious.

The recommendation in this case, submitted by the DRB, was for a three-month suspension. We are in agreement with that level of discipline, wherefore respondent will be suspended from the practice for three months. He will be required to reimburse the Ethics Financial Committee for appropriate administrative costs.

So ordered.

*For suspension*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, and GARIBALDI—6.

### ORDER

It is ORDERED that JOEL M. ALBERT of HACKENSACK, who was admitted to the bar of this State in 1961, be suspended from the practice of law for a period of three months, effective August 24, 1990, and until further Order of this Court; and it is further

ORDERED that JOEL M. ALBERT reimburse the Ethics Financial Committee for appropriate administrative costs; and it is further

ORDERED that JOEL M. ALBERT be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that JOEL M. ALBERT comply with Administrative Guideline Number 23 of the Office of Attorney Ethics dealing with suspended attorneys.